UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



CHRISTOPHER RAMSEY,

    Plaintiff,

v.                                                Case No. 2:11-cv-207

SANIBEL & LANCASTER
INSURANCE, LLC, *et al.*,

    Defendants.

**REPORT AND RECOMMENDATION**

On June 30, 2015, United States District Judge Mark Davis issued a Memorandum Order granting the Plaintiff Christopher Ramsey's Motion for Execution Sale, ECF No. 37, and ordering the sale of property located at 4301 Newport Ave., a/k/a 600 Maryland Ave., Norfolk, Virginia ("the property"). ECF No. 65. Pursuant to 28 U.S.C. § 636(b)(3) and EDVA Local Rule 72, on August 4, 2015, Judge Davis referred to the undersigned certain issues in order to expedite the sale of property and consequently satisfy the Plaintiff's judgments against certain defendants. ECF No. 69. Specifically, Judge Davis designated the undersigned to conduct hearings, including evidentiary hearings, if necessary, and to submit proposed findings of fact that determine:

    (1) The persons who possess an interest in the property and the extent of their respective interests therein;

    (2) The liens on the property, including the holders of such liens and the amount thereof;

    (3) The order of priority of the liens on the property; and

    (4) Whether all interested parties are currently before the court.

1

*Id.* at 1-2. This Court ordered the parties to submit memoranda and supporting evidence addressing the above four issues. ECF No. 72. Plaintiff responded on September 8, 2015. ECF No. 73. A third party sent a letter to the Court on September 28, 2015, asserting an interest in the property due to a settlement agreement. ECF No. 74. After the time for filing a response expired, the Defendants and owners of the property filed a Motion for Extension of Time to File a Response ("Motion for an Extension") on October 13, 2015. ECF No. 76. Plaintiff filed a Reply on October 19, 2015, asserting that the Defendants failed to show good cause and excusable neglect for an extension of time. ECF No. 28. The Court denied the Motion for an Extension. ECF No. 79.[1] After review, the undersigned finds the facts can be determined without a hearing, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). The Court **FINDS** and summarizes the following:

(1) The following persons possess an interest in the property: New York Mortgage Company, LLC ("NYMC"), the United States Department of Treasury – Internal Revenue Service ("IRS"), Plaintiff Christopher Ramsey, and Bennetts Creek Landing Homeowners Association ("BCLHA").

(2) NYMC's lien derives from a promissory note executed March 28, 2005, in the original amount of $220,000.00. The remaining balance is currently unknown. The IRS's lien derives from two Notices of Federal Tax Liens in the amount and priority of $382,183.59 and $13,533.81. Plaintiff's lien derives from a default judgment entered on March 28, 2012, in the amount of $27,661.25 plus post-judgment interest. The BCLHA

---

[1] In their Motion for an Extension, the Defendants attempted to re-argue the merits of their position in opposition to the entry of default judgment, an issue which may not be relitigated here. *See Combs v. Richardson*, 838 F.2d 112, 113 (4th Cir. 1988) (finding that a "judgment debtor is precluded from relitigating an issue that was actually litigated and decided in an earlier proceeding and that was necessary to the decision"). Furthermore, inasmuch as the time for responding had expired, the Defendants should have filed a motion for leave to file out of time, not for an extension, and included their proposed filing, which they failed to do.

2

has three liens on the property, all deriving from three separate judgments, two of which were recorded on April 28, 2012 and one on April 1, 2014. The judgments total $1,602.79 plus interest, $2,009.67 plus interest, and $2869.35 plus interest, respectively and in order of priority.

(3) The order of priority of the lienholders is as follows:

1. NYMC;

2. The IRS;

3. Plaintiff Christopher Ramsey;

4. BCLHA.

(4) In order to have all interested parties before the Court regarding the Motion for Execution Sale, ECF No. 37, NYMC, the IRS, and BCLHA (in addition to the Plaintiff Christopher Ramsey) should be notified as claimants to the potential sale proceeds.

## I. BACKGROUND

On March 28, 2012, the District Court entered default judgment in favor of Plaintiff in the amount of $27,661.25,[2] plus post-judgment interest. ECF Nos. 17 and 18. Defendants Roberta L. Garcia-Guajardo and Steven Guajardo (hereinafter "Judgment Debtors") are jointly and severally liable to Plaintiff for this amount. *Id.* Judgment Debtors own the property in fee simple as tenants by the entireties. ECF No. 78 attach. 1. Plaintiff recorded the Abstract of Judgment with the Norfolk Circuit Court on May 17, 2012. ECF No. 73 attach 2. Pursuant to a Writ of Execution issued on August 19, 2014, the United States Marshals Service levied on the property. ECF No. 31. Plaintiff served the Judgment Debtors by posting service at the property

---

[2] Plaintiff's judgment is the product of $11,592.50 in unpaid overtime wages and unpaid commissions, $11,592.50 in liquidated damages, and $4,476.25 in attorneys' fees and costs. ECF No. 17.

and through U.S. mail on October 9, 2014. ECF No. 34. Plaintiff then filed a Motion for Execution Sale to have the property sold to satisfy the Plaintiff's judgment and other lienholders on the property. ECF No. 37.

On June 30, 2015 the District Judge granted Plaintiff's Motion for Execution Sale. ECF No. 65. A judicial sale was ordered whereby the United States Marshal for the Eastern District of Virginia, or his representative, will sell the property at public auction under 28 U.S.C. §§ 2001 and 2002, to satisfy Plaintiff's judgment. *Id.* at 4. Pursuant to that Order, the matter was referred to the undersigned "to identify the owners of the property, to determine the existence and priority of the liens on the property, including the amount of any judgment lien Plaintiff possesses on the property, and to determine whether all interested parties are properly before the Court." *Id.* at 3.

On August 25, 2015, the undersigned issued an Order directing the Plaintiff to submit memorandum and supporting evidence addressing the issues identified in the District Judge's June 30, 2015 Order. ECF No. 72. All Defendants, including the Judgment Debtors, were given ample opportunity to respond. *Id.* Plaintiff was the only party to timely submit a memorandum and supporting evidence since the Court denied the Judgment Debtors' Motion for an Extension. ECF No. 73; ECF No. 79. The Court received a letter from a non-party, Steven Montaño ("Mr. Montaño") on September 28, 2015, stating he has a claim to the property. ECF No. 74. After examination of the uncontested evidence submitted by Plaintiff, as well as the record of this matter as a whole, this matter is now ripe for disposition.

## II. DISCUSSION

**A. Not all persons who possess an interest in the property are before the Court.**

4

There are four interested parties regarding the sale of the property: NYMC, the IRS, the Plaintiff, and the BCLHA. Plaintiff's Response on Execution Sale concedes that, in addition to himself, NYMC and the BCLHA each hold a lien on the property. ECF No. 73 at 2-3. Plaintiff also notes that there are other recorded liens against the Judgment Debtors in their individual capacity but not against them jointly. *Id.* at 3-4. Plaintiff contends that because the Joint Debtors own the property as tenants by the entirety, "creditors of either of the debtors, individually, are not parties." *Id.* at 4. Therefore, Plaintiff argues that the IRS's three Federal Tax Liens and a judgment obtained by Unifund CCR Partners against Steven Guajardo individually are not relevant to the sale. *Id.* at 3. This notion is correct with regard to state law creditors such as Unifund CCR Partners, but not with regard to the federal government and federal tax liens.

A tenancy by the entirety is one held by joint tenants that are also married. *See Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984) ("It is settled that tenancies by the entirety are based upon the same four unities that support joint tenancies, that is, the unities of title, estate, time, and possession . . . [and also] the unity of marriage."). Essentially, the property is held by the entirety of the marriage and not simply by the individuals jointly. In Virginia, to create a tenancy by the entirety, the deed must indicate the intent to create such with "the magic words 'tenants by the entirety' [or] the owners are described as husband and wife and take jointly with right of survivorship." *In re Potter*, 274 B.R. 224, 229 (Bankr. E.D. Va. 2002). The Judgment Debtors' deed states "as tenants by the entirety with the right of survivorship as at common law." ECF No. 78 attach. 1. Therefore, the Joint Debtors here own as tenants by the entirety.

Generally, creditors of only one tenant cannot attach a lien to property held jointly as

5

tenants by the entirety. *See In re Sprouse*, 91 F.3d 133 (4th Cir. 1996) (noting that creditors of one spouse are shielded from attaching a lien on property held jointly by both spouses as a tenancy by the entirety); *In re Potter*, 274 B.R. at 228 ("Under Virginia law, property held as tenants by the entirety may be reached by joint creditors of both spouses but is not liable for the debts of either spouse alone."); *Pitts v. United States*, 242 Va. 254, 257, 408 S.E.2d 901, 902 (1991) (noting that when property is held by a tenancy by the entirety, "such property is not subject to levy by a creditor of only one of the tenants"); *Conwell*, 227 Va. at 181, 314 S.E.2d at 64 ("[A] judgment lien creditor of one spouse [cannot] subject that property to the satisfaction of his lien."). However, this is not true with respect to federal tax liens. "State law determines what constitutes 'property and rights to property' under 26 U.S.C. § 6321, but 'the consequences that attach to those interests is a matter left to federal law.'" *United States v. Bowser*, 768 F. Supp. 2d 846, 850 (E.D. Va. 2011) (citing *United States v. Rodgers*, 461 U.S. 677, 683 (1983)).

Pursuant to the Internal Revenue Code, "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The Supreme Court, in *United States v. Craft*, interpreted this provision as a federal question "in no way bound by state courts' answers to similar questions involving state law." 535 U.S. 274, 288 (2002). The issue in the case was whether a tenant by the entirety pursuant to Michigan state law possessed "property" or "rights to a property" to which a federal tax lien could attach. *Id.* at 276. The Court held that property owned by a tenant by the entirety as designated under state law is subject to attachment of federal tax liens. *Id.* at 283. Simply because one is exempt under state law does not bind a federal collector. *Id.* at 288 (citing *Drye v. United States*, 528 U.S. 49, 59 (1999)). Further, the Court stated that were the contrary true,

spouses could "shield their property from federal taxation by classifying it as entireties property, facilitating abuse of the federal tax system." *Id.* at 285; *see also Bowser*, 768 F. Supp. 2d at 850 ("[T]here must be a remedy for the United States' right to enforce a lien against a taxpayer's property, whether or not that remedy impacts the rights of a third party in such property.").

Therefore, in addition to the Plaintiff, the other parties or creditors that claim an interest due to a judgment or lien against the Judgment Debtors are NYMC, the United States or IRS, and the BCLHA.[3] NYMC and BCLHA each have valid interests as creditors of the Judgment Debtors jointly, and the IRS has a valid claim because it has a valid federal tax lien attached to the property. Therefore, the above mentioned parties should be notified before the Court renders distribution of the proceeds from the sale.

**B. The liens on the property, including the holders of such liens and the amount thereof; as well as the order of priority of the liens on the property.**

According to Plaintiff's undisputed Response on Execution Sale, ECF No. 73 at 2-3, and the attachments provided, *Id.* attachs. 1-8, there are seven identified liens attached to the property. When there are multiple liens on a property, the general principle followed is "first in time, first in right," as in, the first lienholder takes the full value of his judgment before the second and subsequent lienholders take their interests. *See United States v. City of New Britain, Conn.*, 347 U.S. 81, 85 (1954) ("We believe that priority of these statutory liens is determined by

---

[3] As mentioned, *supra*, Mr. Montaño submit a letter to the Court on September 28, 2015 also claiming an interest in the property. Mr. Montaño asserts that he "possesses a security interest in said property per agreement between [himself] and Roberta Guajardo, a party to this suit." ECF No. 74 at 1-2. As he stated, his interest is only against one of the Judgment Debtors, Roberta Guajardo, in her individual capacity. Unlike the IRS's federal tax lien, Mr. Montaño's interest as a creditor is purely determined by state law. Similarly, Unifund CCR Partners obtained a judgment against Defendant Steven Guajardo in the amount of $6,318.38, which was recorded on June 15, 2007 in the Norfolk Circuit Court. ECF No. 73 attach. 8 (Record Instrument No. 070007127). Therefore, pursuant to Virginia's laws regarding property held by a tenancy by the entirety, Mr. Montaño and Unifund CCR Partners do not have secured interests in the property because as creditors of only one tenant, their interests cannot attach to the property.

another principle of law, namely, 'the first in time is the first in right.'"); *United States v. Cameron*, 248 Va. 290, 293, 448 S.E.2d 410, 413 (1994) ("Generally, the relative priority to be given competing liens is determined according to the rule that the first in time is the first in right.").

The first lienholder is NYMC. ECF No. 73 at 2. Plaintiff included a Commonwealth of Virginia Land Record Instrument identifying a Deed of Trust executed by the Judgment Debtors. *Id.* attach. 1 (Record Instrument No. 050012562). On March 28, 2005, the Judgment Debtors conveyed the property by Deed of Trust to David Weeks as Trustee for the benefit of NYMC to secure the payment of a promissory note in the amount of $220,000.00. *Id.* The balance remaining on this note is unknown as NYMC did not respond. *Id.*

The IRS recorded two Notices of Federal Tax Liens on the property. *Id.* attachs. 5-6. The IRS recorded the first Notice on March 3, 2009, stating the unpaid balance of assessment in the amount of $382,183.59. *Id.* attach. 5. The Notice stated the date of assessments as December 18, 2006, March 5, 2007, August 18, 2008, and November 3, 2008. *Id.* The IRS recorded the second Notice on February 3, 2010, in the amount of $13,533.81. *Id.* attach. 6. The Notice stated the date of assessment as May 4, 2009. *Id.* Under federal law, the federal tax lien attached when the property was assessed, not when it was recorded. *See Glass City Bank of Jeanette, Pa., v. United States*, 326 U.S. 265, 267 (1945) ("[T]he lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."); *In re S. Independence, Inc.*, 256 B.R. 861, 868 (Bankr. E.D. Va. 2000) (noting that "under federal law, the IRS liens arose at the time the IRS assessed the fuel taxes"); *Moco Investments, Inc. v. United States*, 362 F. App'x 305, 309 (3d Cir. 2010) (noting that "a federal tax lien arises at the time the

tax is *assessed,* not when the lien is *recorded.*") (emphasis in original). However, when determining federal tax lien priority in relation to other creditors—mortgagees, pledgees, purchasers, and judgment creditors—the lien "is not valid until placed of public record." *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88 (1963); *In re S. Independence, Inc.*, 256 B.R. 861, 868 (Bankr. E.D. Va. 2000) ("A judgment lien creditor is not bound by the date of tax assessment for purposes of priority, but rather the date of when the notice of federal tax lien was filed controls."). Determining the priority in relation to the Plaintiff as a judgment creditor is not an issue in this case because the IRS's Federal Tax Liens were both assessed and recorded as public record before the Plaintiff obtained his judgment.

Plaintiff received the default judgment on March 28, 2012,[4] against the Judgment Debtors. ECF No. 18. Damages associated with the judgment amount to $27,661.25 plus post-judgment interest from March 28, 2012. *Id.* Plaintiff perfected his interest, thereby securing his spot as the third priority lienholder on the property, by recording the Abstract of Judgment with the Norfolk Circuit Court on May 17, 2012. ECF No. 73 at 2 n.1; *see also Air Power, Inc. v. United States*, 741 F.2d 53, 55 (4th Cir. 1984) (explaining how judgment creditors are protected 'in time' once they perfect their interests); *see also United States v. City of Greenville*, 118 F.2d 963, 965 (4th Cir. 1941) (discussing junior and senior liens and the acts of subordination and perfection).

Third, the BCLHA recorded a judgment on August 28, 2012, in the amount of $1,125.59 plus $102.00 in costs and $375.20 in attorneys' fees and interest from May 5, 2011. ECF No. 73 attach. 2 (Record Instrument No. 120007739). The BCLHA perfected its interest by recording the Abstract of Judgment with the Norfolk Circuit Court, securing its interest as the fourth priority lienholder. *Id.* The BCLHA recorded a second Abstract of Judgment on August 28,

---

[4] The judgment was later amended on April 19, 2012. ECF No. 20.

2012, in the amount of $1,422.50 plus $113.00 in costs and $474.17 in attorneys' fees plus interest from August 10, 2010. ECF No. 73 attach. 3 (Record Instrument No. 120007740). The BCLHA has a third lien on the property in the amount of $2,109.26 plus $57.00 in costs and $703.09 in attorneys' fees and interests. ECF No. 73 attach. 4 (Record Instrument No. 140003125). The BCLHA recorded the Abstract of Judgment on April 1, 2014. *Id.*

Following the "first in time, first in right" general rule of creditors' rights, NYMC perfected its lien first, exchanging a promissory note for a deed of trust with the Judgement Debtors on March 28, 2005. According to the Deed Record for the City of Norfolk, this interest was recorded on March 29, 2005. The IRS assessed the federal taxes between 2006 and 2008, and recorded the Notices of Federal Tax Liens on March 3, 2009 and February 3, 2010. Plaintiff recorded his Abstract of Judgment against the Judgment Debtors in May of 2012, a few months before the BCLHA recorded its first Abstract of Judgment. Therefore, the BCLHA's interest is subordinate to the Plaintiff's interest, which is subordinate to the IRS's interest, which is subordinate to NYMC's interest.

### III. RECOMMENDATION

Based on the above listed findings, the undersigned **RECOMMENDS** that the proceeds from the sale of the property be **DISTRIBUTED IN THE PRIORITY AS FOLLOWS:**

(1) NYMC in the amount of the remaining balance on the March 28, 2005 promissory note;

(2) The IRS in the amounts of $382,183.59 and $13,533.81;

(3) Plaintiff Christopher Ramsey in the amount of $27,661.25 plus post-judgment interest;

(3) The BCLHA in the amounts of $1,602.79 plus interest; $2,009.67 plus interest; and $2869.35 plus interest.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this report and recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The United States District Judge shall make a de novo determination of those portions of this report and recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record and *pro se* Defendants.

/s/ Lawrence R. Leonard
LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 27, 2015