

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CHRISTOPHER RAMSAY,

        Plaintiff,

v.                                 Civil Action NO. 2:11cv207

SANIBEL & LANCASTER INSURANCE, LLC,
ROBERTA L. GARCIA-GUAJARDO,
STEVEN GUAJARDO, and
GARY J. HUNTER,

        Defendants.

## MEMORANDUM ORDER

This matter is before the Court on the United States Magistrate Judge's Report and Recommendation, ECF No. 80, and the parties' objections to such Report and Recommendation, regarding certain issues related to the sale of "4301 Newport Ave., a/k/a 600 Maryland Ave., Norfolk, Virginia" ("the property"). As discussed below, following a de novo review of the Report and Recommendation, and the objections filed thereto, the Court will **ADOPT** the findings and recommendations set forth in the Report and Recommendation of the United States Magistrate Judge filed on October 27, 2015, **AS AMENDED** by this Memorandum Order.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 30, 2015, the Court granted Plaintiff's Motion for Execution Sale, ECF No. 37, and determined that it would order the sale of the property. ECF No. 65. On August 4, 2015, pursuant to

28 U.S.C. § 636(b)(3) and Local Rule 72, the Court referred this matter to the co-assigned United States Magistrate Judge to resolve certain issues related to the sale of the property. ECF No. 69. The Report and Recommendation of the Magistrate Judge was filed on October 27, 2015, ECF No. 80, proposing findings and recommendations regarding (1) the persons who possess an interest in the property and the extent of their respective interests; (2) the liens on the property; (3) the order of priority of the liens on the property; and (4) whether all interested parties are currently before the Court. Id. at 1.

By copy of the Report and Recommendation, each party was advised of the right to file written objections to the findings and recommendations made by the Magistrate Judge. On October 30, 2015, Plaintiff filed his objections to the Report and Recommendation. ECF No. 81. On November 12, 2015, Judgment Debtor and Defendant, Roberta Garcia-Guajardo ("Garcia-Guajardo"), filed objections to the Report and Recommendation. ECF No. 86. Plaintiff responded to Garcia-Guajardo's objections on November 24, 2015, ECF No. 87, and Garcia-Guajardo filed a "Response to Plaintiff['s] Objections" on December 4, 2015, ECF No. 88. On January 25, 2016, based on such objections, the Court directed the parties to submit supplemental information regarding the entity that holds the mortgage lien on the property. ECF No. 89. On February 8, 2016, both parties responded to the Court's Order. ECF Nos. 91, 92. About that same time,

2

Judgment Debtor and Defendant Steven Guajardo ("Guajardo") filed three separate Voluntary Petitions for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. See Case No. 2:15-bk-74306, Bankr. E.D. Va., ECF No. 1; Case No. 2:16-bk-70222, Bankr. E.D. Va., ECF No. 1; Case No. 2:16-bk-70685, Bankr. E.D Va., ECF No. 1. As discussed in the Court's Order, dated May 19, 2016, Guajardo's bankruptcy petitions have been dismissed and this matter is no longer subject to a stay related to Guajardo's petitions for Chapter 13 bankruptcy. ECF No. 95. However, as the Court stated in its May 19, 2016 Order, issues remained regarding the identity of the entity that holds the mortgage on the property and the Court ordered Plaintiff to submit additional information regarding the entity that currently holds the mortgage on the property. Id. at 4. On May 26, 2016, Plaintiff filed his response to the Court's May 19, 2016 Order. ECF No. 96. The Court now has sufficient information to review the Report and Recommendation and will address the parties' objections to such Report and Recommendation in turn.

## II. **PLAINTIFF'S OBJECTIONS**

Plaintiff makes two objections to the Report and Recommendation. First, while Plaintiff does not object to the order of priority recommended by the Magistrate Judge, Plaintiff does object to the amount of the property sale proceeds to which the United States Department of the Treasury, Internal Revenue Service ("IRS")

3

has a claim.  Pl.'s Objs. to R. & R. at 1-2.  Plaintiff asserts that, although the IRS has proper and valid liens on the property owned by Guajardo and Garcia-Guajardo as tenants by the entirety, the IRS is entitled to only one-half of the proceeds from sale of the property, after payment of costs and the superior mortgage lien, because the IRS's liens are against Guajardo only.  Id. at 2. Second, and relatedly, Plaintiff argues that, after payment of costs, the mortgage lien, and one-half of the remaining proceeds to the IRS, Garcia-Guajardo should be allowed to apply all remaining sale proceeds to Plaintiff's individual or joint and several debts against her in the order that she chooses.  Although Garcia-Guajardo filed objections and a "Response to Plaintiff[']s Objections," she does not address either of Plaintiff's objections.  As discussed below, the Court **SUSTAINS** Plaintiff's objection regarding the amount of sale proceeds to which the IRS has a claim, and **OVERRULES** Plaintiff's objection regarding Garcia-Guajardo's ability to discretionarily pay her debts with the property sale proceeds remaining after payment of the costs, the mortgage lien, and the IRS tax liens.

## A. IRS Interest in Sale Proceeds

In this matter, Guajardo and Garcia-Guajardo own the property as tenants by the entirety.  Pl.'s Resp., Ex. 1, Deed of Bargain and Sale, ECF No. 78-1.  The IRS tax liens are against Guajardo only. Pl.'s Resp. on Execution Sale, 3. ECF No. 73; id. Exs. 5, 6, 7, Notice of Federal Tax Lien, ECF Nos. 73-5, 73-6, 73-7.  As the Magistrate

4

Judge noted, "[g]enerally, creditors of only one tenant cannot attach a lien to property held jointly as tenants by the entirety." R. & R. at 5-6 (listing cases in support). However, the United States Supreme Court has recognized an exception to this general rule with respect to federal tax liens. In United States v. Craft, 535 U.S. 274 (2002), the Supreme Court held that property owned as a tenancy by the entirety may be subject to attachment of federal tax liens, even though the tax liens are against one tenant only. Id. at 283-84. In Craft, interpreting 26 U.S.C. § 6321 which allows a federal tax lien to be attached "upon all property and rights to property, whether real or personal, belonging to [a federal tax debtor]," the Supreme Court determined that a federal tax lien may attach to a debtor-tenant's interest in property held as a tenancy by the entirety when that interest "constitute[s] 'property' or 'rights to property'" under the applicable state law. Id. at 283. Relying on the ruling in Craft, and determining that the IRS "has a valid federal tax lien attached to the property" under Virginia law, the Magistrate Judge found that the IRS has a valid claim to proceeds of the sale of the property, after payment of the costs of sale and the superior mortgage lien. R. & R. at 6-7 (citing Craft, 535 U.S. at 283-88). The Magistrate Judge, however, did not determine the extent of Guajardo's interest in the tenancy by the entirety property, the proceeds of which may be applied to the IRS liens. The Court, therefore, **AMENDS** the Report and Recommendation to note that, because

5

Guajardo's rights to the property are equal to a one-half interest in the property, the IRS's claim on the proceeds of the property sale is <u>limited</u> to one-half of the sale proceeds, after payment of the costs of sale and the superior mortgage lien.

While the Supreme Court has held that a valid IRS lien may attach to a debtor-tenant's interest in property held as a tenancy by the entirety, it did not address the extent of such interest or the value of such interest for purposes of paying an IRS lien. See <u>Craft</u>, 535 U.S. at 289 ("We express no view as to the proper valuation of respondent's husband's interest in the entireties property . . . ."). However, several courts have found that, when a federal tax lien against an individual is attached to property held as a tenancy by the entirety, the debtor-tenant's "property or right to property" is equal to a one-half interest in, or fifty percent of, the tenancy by the entirety property. Thus, such courts have found that the IRS's lien attaches only to the debtor-tenant's one-half interest in the property, and the IRS's lien is paid out of the sale proceeds of that one-half interest. For example, in <u>Popky v. United States</u>, 419 F.3d 242 (3d Cir. 2005), the Court of Appeals for the Third Circuit found that, under Pennsylvania law, the IRS debtor had an interest in property held as a tenancy by the entirety and an IRS tax lien was properly attached to the debtor-tenant's interest. <u>Id.</u> at 244. However, the debtor-tenant's interest was equal to one-half of the property, in

6

accordance "with the longstanding Pennsylvania definition of tenancies by the entireties" and Pennsylvania's practice of equal division of assets between spouses "when an entireties estate is severed because of a sale with consent of both tenants, divorce or other reasons." Id. at 245 (internal citations omitted). Thus, "[w]hen a federal tax lien attaches to a property held in a tenancy by the entireties, it attaches to the delinquent taxpayer's one-half interest in the property." United States v. Tyler, 528 F. App'x 193, 198 (3d Cir. 2013) (unpublished) (citing Popky, 419 F.3d at 244-45); see United States v. Hoyt, 524 F. Supp. 2d 638, 642 (D. Md. 2007) (citing Popky, 419 F.3d at 244-45, for the proposition that the government was entitled to fifty percent of the proceeds from sale of Maryland property, held as a tenancy by the entirety, to satisfy tenant-taxpayer's debt for unpaid tax assessments). Thus, the Third Circuit held that, because the debtor-tenant's "property or rights to property" is equal to a one-half interest in the tenancy by the entirety property, the IRS's federal tax lien attaches to the debtor-tenant's one-half interest in such property, and the IRS's tax lien is paid out of the sale proceeds of that one-half interest.

Similarly, in the unpublished case of United States v. Barczyk, 434 F. App'x 488 (6th Cir. 2011), the Sixth Circuit held that, under Michigan law, the debtor-tenant had an interest in property held as a tenancy by the entirety and the IRS tax lien was properly attached to the debtor-tenant's interest in such property. Id. at 493.

7

However, the Sixth Circuit determined, "because tenants by the entirety[, under Michigan law,] 'have equal interests in their home, division according to their interests results in an equal distribution of the proceeds of the sale of the home'" between the innocent and debtor tenant. Id. at 494 (citing United States v. Barr, 617 F.3d 370, 373 (6th Cir. 2010)). Thus, in Barczyk, the Sixth Circuit held that the "non-defaulting spouse 'is entitled to fifty percent of the proceeds of the foreclosure sale of the home,' with the other fifty percent going to the Government to satisfy the defaulting spouse's tax debt." Id. (quoting Barr, 617 F.3d at 373); see also United States v. Winsper, 680 F.3d 482, 492 (6th Cir. 2012) (determining that, under Kentucky law, an innocent tenant and debtor tenant have interests in tenancy by the entirety property "of equal character and value" and, if the property is to be sold to satisfy the debtor tenant's IRS lien, the innocent tenant has a 50% interest in tenancy by the entirety property).

Virginia law, similar to Pennsylvania and Michigan law discussed above, instructs that spouses, who own property as a tenancy by the entirety, equally share in such estate "a present right to the use and possession of, and income from the entire property, and an expectancy of survivorship to the interest of the other spouse." In re Phillos, 14 B.R. 781 (Bankr. W.D. Va. 1981)(internal citations omitted). Thus, if a tenancy by entirety is sold or divided, and such division is not otherwise addressed by law, a

8

Virginia tenant's "right[] to property," held as a tenancy by the entirety, is equal to a one-half interest in such property.[1] See Sundin v. Klein, 221 Va. 232, 241 (1980) (determining that a wife had an "undivided one-half interest" in property held as a tenancy by the entirety with her husband and imposing a constructive trust upon such interest after husband killed the wife (citing Norris v. Barbour, 188 Va. 723, 743-44 (1949); Jenkins v. Jenkins, 211 Va. 797, 799-800 (1971))); Lightburn v. Lightburn, 22 Va. Ct. App. 612, 616 (1996) (explaining that, prior to enactment of Va. Code § 20-107.3, which requires equitable distribution of marital assets in divorce proceeding, a tenant was entitled to "an undivided one-half interest" in property held as a tenancy by the entirety (citing Sundin, 221 Va. at 241)); Pratt v. Pratt, No. 2394-10-4, 2012 WL 3573972, at *2 (Va. Ct. App. Aug. 21, 2012) (unpublished) (explaining that "[d]uring their marriage, husband and Agatha held the house as tenants by the

---

[1] While a husband and wife's rights to property held as a tenancy by the entirety are generally understood to be equal, actual division or sale of said property may differ depending upon the circumstances. For example, even though a voluntary sale of tenancy by the entirety property severs the tenancy by the entirety held in the property, the tenancy by the entirety continues in the proceeds of the sale, absent some other agreement. Oliver v. Givens, 204 Va. 123, 126-27 (1963) ("[W]e hold that in the present case the proceeds of the sale of the Laurel Glen property, which the husband and wife had owned as tenants by the entireties, were likewise owned and held by them as tenants by the entireties."). Similarly, a divorce severs a tenancy by the entirety, but, pursuant to Va. Code Ann. § 20-107.3, marital property is distributed equitably. However, in a divorce matter prior to enactment of Va. Code § 20-107.3, when a statutory equitable distribution proceeding was absent, a tenant was entitled to "an undivided one-half interest" in property held as a tenancy by the entirety. Lightburn v. Lightburn, 22 Va. Ct. App. 612, 616 (1996) (citing Sundin v. Klein, 221 Va. 232, 241 (1980)).

entirety, each owning an undivided one-half interest in the whole"
(citing Lightburn, 22 Va. Ct. App. at 615)). Further, courts that
have addressed enforcement of a federal tax lien against a tenant
of Virginia property, held as a tenancy by the entirety, have found
that a tenant of such property is entitled to a one-half interest
in such property. Gregory v. U.S. Dep't of Treasury, No.
1:12-CV-00042, 2012 WL 5426533, at *1 n.2 (W.D. Va. Nov. 7, 2012)
(unpublished) ("[A] federal tax lien can apply to an individual
spouse's one-half interest in property held as tenants by the
entirety, so long as the law of the state in which the property is
located would treat the individual spouse's interest as a property
interest. It is undisputed that Virginia, the state in which the
property is located, so treats a spouse's ownership as a tenant by
the entirety." (internal citations omitted)); cf. United States v.
Parr, No. 3:10-CV-00061, 2011 WL 4737066, at *5 (W.D. Va. Oct. 6,
2011) (unpublished) (finding that the sale proceeds of property held
as a tenancy by the entirety, after payment of a priority mortgage
lien, should be divided between the debtor tenant to satisfy his
federal tax delinquency and the non-liable tenant "to compensate her
for her non-liable possessory interest in the property"). 
Additionally, in addressing the Supreme Court's decision in Craft,
the IRS has determined that "[a]s a general rule, the value of the
taxpayer's interest in entireties property will be deemed to be
one-half." Collection Issues Related to Entireties Prop., 2003-2

10

C.B. 643, 2003-39 I.R.B. 643 (2003). Thus, in Virginia, a debtor-tenant who owns property held as a tenancy by the entirety possesses a one-half interest in such property and a federal tax lien may attach to that debtor-tenant's one-half interest.

Thus, as the property is located in Virginia, and Virginia recognizes that tenants have a one-half interest in property held as a tenancy by the entirety, the Court finds that Guajardo has a one-half interest in the property. As such, the IRS's liens attach to Guajardo's one-half interest and shall be paid out of the sale proceeds of that one-half interest, after payment of costs and the superior mortgage lien. Therefore, the Court **SUSTAINS** Plaintiff's objection regarding the amount of sale proceeds to which the IRS has a claim, and **AMENDS** the Report and Recommendation to note that: (1) Guajardo has a one-half interest in the property, (2) the IRS's liens attach to Guajardo's one-half interest in the property, and (3) the IRS's liens shall be paid out of the sale proceeds of that one-half interest, after payment of the costs of sale and the superior mortgage lien.

### B. Discretionary Payment

Second, Plaintiff argues that the remaining sale proceeds, after payment of costs, the mortgage lien, and Guajardo's federal tax liens, belong to Garcia-Guajardo because the tenancy by the entirety is terminated once the property is sold at execution sale. Pl.'s Objs. to R. & R. at 4. As such, Plaintiff argues,

11

Garcia-Guajardo may pay off her debts to Plaintiff, whether such debts are against her individually or such debts are against her jointly and severally, in whatever order she chooses.  Plaintiff's argument is unavailing and the Court **OVERRULES** Plaintiff's second objection.

Plaintiff cites no case law in support of his argument that, after payment of costs, the mortgage lien, and Guajardo's federal tax liens, the proceeds of the property sale "are no longer tenancy by the entirety property" and, thus, belong to Garcia-Guajardo. Instead, and contrary to Plaintiff's argument, Virginia law indicates that, although sale of tenancy by the entirety property terminates the tenancy by the entirety held in the property, the tenancy by the entirety, absent other arrangements, continues in the proceeds of the sale.  See Oliver v. Givens, 204 Va. 123, 126-27 (1963) ("[W]e hold that in the present case the proceeds of the sale of the Laurel Glen property, which the husband and wife had owned as tenants by the entireties, were likewise owned and held by them as tenants by the entireties."); see also In re Nagel, 298 B.R. 582, 588 (Bankr. E.D. Va. 2003) ("Proceeds from the voluntary sale of real property held by a husband and wife as tenants by the entirety with the common-law right of survivorship automatically continue to be held by them as tenants by the entirety with the common-law right of survivorship until there is 'an agreement or understanding to the contrary.'" (citing Oliver, 204 Va. at 126-27; Sprouse v. Griffin,

250 Va. 46, 51 (1995); Pitts v. United States, 242 Va. 254, 261-62 (1991))). Thus, even after sale of the property, Garcia-Guajardo and Guajardo continue to possess the proceeds of the property sale as a tenancy by the entirety and, absent certain circumstances, "creditors of only one tenant cannot attach a lien to property held jointly as tenants by the entirety." R. & R. at 5-6. Therefore, while Garcia-Guajardo may owe Plaintiff a debt in her individual capacity, such debt cannot be attached as a lien to the sale proceeds of property held as a tenancy by the entirety.

Further, even if Guajardo and Garcia-Guajardo's tenancy by the entirety in the property was terminated by sale of the property, and Garcia-Guajardo had control of the remaining proceeds, Plaintiff has not provided support for his argument that Garcia-Guajardo may use the remaining sale proceeds to pay off her debts to Plaintiff in a discretionary order. Generally, a debtor, making payment "involuntarily as in an execution or judicial sale" may not direct the application of her money to such items or demands as she chooses. O'Dell v. United States, 326 F.2d 451, 456 (10th Cir. 1964) (internal citations omitted); see In re R.L. Inge Dev. Corp., 78 B.R. 793, 794 (Bankr. E.D. Va. 1987) (finding that "a debtor whose payment is involuntary may not direct how those payments are to be allocated to his tax debts" (citing O'Dell, 326 F.2d at 456)). Further, Plaintiff, in his Status Report, submitted on May 20, 2015, proposed that the proceeds of the sale of the property should be distributed

13

"first to the costs of the sale and then in accordance with the rights of the parties holding an interest or lien in the property <u>based on the priority of such interests</u> as determined by the Court." Status Report, 2, ECF No. 56 (emphasis added). As the Magistrate Judge found, there remain four valid liens against the property, as joint and several judgments against Guajardo and Garcia-Guajardo, after payment of the costs of sale, the mortgage lien, and Guajardo's federal tax liens. In order of priority, such liens are: (1) Plaintiff's judgment of $27,661.25 plus post-judgment interest which was recorded with the Norfolk Circuit Court on May 17, 2012; (2) Bennetts Creek Landing Homeowners Association's ("BCLHA") judgment of $1,602.79 plus interest which was recorded with the Norfolk Circuit Court on August 28, 2012; (3) BCLHA judgment of $2,009.67 plus interest which was recorded with the Norfolk Circuit Court on August 28, 2012; and (4) BCLHA judgment of $2,869.35 plus interest which was recorded with the Norfolk Circuit Court on April 1, 2014. Plaintiff provides no support for his argument that Garcia-Guajardo may disregard this order of priority, much less that his own wrongful termination judgment against Garcia-Guajardo individually, should jump the line of priority over the valid liens attached to the property. [2]  Therefore, the Court **OVERRULES** Plaintiff's second objection to the Magistrate Judge's Report and Recommendation.

---

[2] Additionally, it does not appear that Plaintiff has perfected a judgment lien on Garcia-Guajardo's interest in the property related to Plaintiff's

14

## III. GARCIA-GUAJARDO'S OBJECTIONS

Garcia-Guajardo appears to present eight objections to the Report and Recommendation: (1) Garcia-Guajardo did not consent to a Magistrate Judge's determinations in this matter; (2) Garcia-Guajardo did not timely receive the Court's August 25, 2015 Order, ECF No. 72; (3) not all parties with an interest in the property have been notified of the sale; (4) the amount of the mortgage lien against the property is not correct; (5) no fair market value appraisal has been ordered; (6) Plaintiff has committed perjury; (7) the Court's narrow Rule 60(b) ruling violated Defendants' constitutional rights; and (8) Plaintiff did not comply with the Court's Order, ECF No. 12, to produce records. Obj. to Magistrate's R. & R., 3-4, ECF No. 86. Plaintiff directly responds to Garcia-Guajardo's first two objections. First, Plaintiff argues that the Court's referral to the Magistrate Judge for a Report and Recommendation is proper and Garcia-Guajardo waived any objection to the Court's referral by failing to object to the Court's Memorandum

---

wrongful termination judgment. To perfect a money judgment as a lien on real estate, the judgment must be "recorded on the judgment lien docket of the clerk's office in the county or city where such land is situated." Va. Code. § 8.01-458; see 28 U.S.C. § 1962. When ordered by the Court to provide supporting evidence regarding the liens on the property, Plaintiff did not list his own wrongful termination judgment against Garcia-Guajardo. See Pl.'s Resp. on Execution Sale, 3, ECF No. 73 (listing individual debts of Defendants and stating "[u]pon information and belief, there are no other liens recorded in the Norfolk Circuit Court against either of the Debtors"); R. & R. at 5. Further, the Court has been provided no other evidence to indicate that Plaintiff perfected his wrongful termination judgment against Garcia-Guajardo.

Order, dated June 30, 2015, ECF No. 65. Second, Plaintiff argues that Garcia-Guajardo had the opportunity to object to the Magistrate Judge's Report and Recommendation and her second objection merely restates the request for relief included in her Motion for Extension to Respond, ECF No. 76, which was denied in this Court's October 22, 2015 Order, ECF No. 79. The Court will address each of Garcia-Guajardo's objections in turn.

First, Garcia-Guajardo waived any objection to this Court's referral of certain issues to a Magistrate Judge. On June 30, 2015, the Court entered a Memorandum Order proposing judicial sale procedures and that the co-assigned Magistrate Judge be referred certain issues for determination prior to sale. Mem. Order, 3-9, ECF No. 65. The Court further ordered the parties to file position papers, within fourteen days of the date of the Memorandum Order, stating any objections to the Court's proposed resolution of Plaintiff's Motion for Execution Sale. Id. at 9. Garcia-Guajardo filed such position paper on July 14, 2015. ECF. No. 67. Although she listed a number of objections, Garcia-Guajardo did not object to the referral of certain matters to the Magistrate Judge. Additionally, Garcia-Guajardo's consent is not necessary and the Court properly referred certain matters to the Magistrate Judge, pursuant to Local Civil Rule 72 and 28 U.S.C. § 636(b)(3). Thus, Garcia-Guajardo's first objection is **OVERRULED**.

Second, the Court has already addressed Garcia-Guajardo's

16

objection regarding her late receipt of the Court's August 25, 2015 Order, ECF No. 72.   Garcia-Guajardo first presented this argument in her Motion for Extension to Respond, filed on October 13, 2015. ECF No. 76.   The Court denied Garcia-Guajardo's Motion for Extension on October 22, 2015.   ECF No. 79.   Further, Garcia-Guajardo has filed objections to the Report and Recommendation, and she has had the opportunity, and has used such opportunity, to submit any additional evidence or information that she otherwise might have been denied due to her late receipt of the Court's August 25, 2015 Order. Thus, Garcia-Guajardo's second objection is **OVERRULED**.

Third, Garcia-Guajardo argues that not all parties with an interest in the property have been notified of the sale.   In support of her argument, Garcia-Guajardo provided the Court with a mortgage statement, dated October 27, 2015, from Carrington Mortgage Services.   Ex., 9, Mortgage Statement, ECF No. 86.   Due to the information contained in such mortgage statement, the Court ordered the parties to submit supplemental information regarding the entity that currently holds the mortgage lien on the property.   Order, ECF No. 89.   The parties simultaneously responded to the Court's Order on February 8, 2016.   ECF Nos. 91, 92.   In her February 8, 2016 submission, Garcia-Guajardo provided the Court with a Virginia Land Record Cover Sheet, dated February 4, 2016, indicating that a new entity held the mortgage on the property.   Statement, 5-7, ECF No. 92.   As this information conflicted with Plaintiff's February 8,

17

2016 submission, on May 19, 2016, the Court ordered Plaintiff to identify the entity who currently holds the mortgage on the property. ECF No. 95.  On May 26, 2016, Plaintiff responded to the Court's Order, stating that the deed records in the Norfolk Circuit Court demonstrate that Carrington Mortgage Loan Trust, Series 2005-NC3 Asset Backed Pass-Through Certificates, is the present holder of the mortgage on the property.  Pl.'s Resp. to Order of the Court on May 19, 2016, 1, ECF No. 96.  Further, Plaintiff notes that Deutsche Bank National Trust Company was the trustee for the property, but, as of May 18, 2016, Professional Foreclosure Corporation of Virginia became the substitute trustee for the property.  Id.  This new information differs from the 2005 mortgage information that the Magistrate Judge relied on in his Report and Recommendation. Therefore, the Court **SUSTAINS** Garcia-Guajardo's third objection. As the information provided by Plaintiff in his May 26, 2016 filing appears to be the most recent and up-to-date information regarding the mortgage on the property, the Court **AMENDS** the Report and Recommendation to note that the current holder of the mortgage lien on the property is Carrington Mortgage Loan Trust, Series 2005-NC3 Asset Backed Pass-Through Certificates.

Fourth, Garcia-Guajardo argues that the reported amount of the mortgage lien on the property is not correct.  Garcia-Guajardo previously raised this objection in response to the Court's June 30, 2015 Memorandum Order addressing proposed sale procedures.  The

Court, reviewing Garcia-Guajardo's objections to its proposed sale procedures, determined that the proposed sale procedures adequately addressed Garcia-Guajardo's concerns on this matter. Mem. Order, 4, ECF No. 68. Thus, to the extent that Garcia-Guajardo's fourth objection requires an immediate resolution, the Court **OVERRULES** Garcia-Guajardo's objection with the understanding that the total mortgage lien amount will be determined through the Court's property sale procedures.

Fifth, Garcia-Guajardo objects to the Magistrate Judge's Report and Recommendation because no fair market value appraisal of the property has been ordered. As explained in the Court's proposed sale procedures, the property shall be sold at public auction. Garcia-Guajardo cites no case in support of her argument that a fair market value appraisal of the property is required prior to sale of the property at public auction, nor is the Court aware of such a requirement. The Court notes that, pursuant to 28 U.S.C. § 2001, an appraisal may be necessary prior to confirmation of a _private_ sale. However, to the extent that an appraisal becomes necessary in this matter under 28 U.S.C. § 2001, the Court's proposed sale procedures adequately address this issue by directing the United States Marshal for the Eastern District of Virginia to comply with such statutory requirements. See ECF No. 65. Thus, Garcia-Guajardo's fifth objection is **OVERRULED**.

Finally, Garcia-Guajardo's sixth, seventh, and eighth

19

objections attempt to raise issues that the Court has already decided.[3] The Court, therefore, **OVERRULES** Garcia-Guajardo's sixth, seventh, and eighth objections because they are further attempts to argue issues that the Court has foreclosed by previously denying Defendants' serial motions for relief from judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court will **ADOPT** the findings and recommendations set forth in the Report and Recommendation of the United States Magistrate Judge filed on October 27, 2015, **AS AMENDED** by this Memorandum Order. As discussed above, the Court **SUSTAINS** Plaintiff's first objection to the Report and Recommendation of the United States Magistrate Judge. The Court **AMENDS** the Report and Recommendation to note that the IRS's liens against Guajardo attach to Guajardo's one-half interest in the property, and such federal tax liens shall be paid out of one-half of the proceeds of the property sale, after payment of the costs of sale and the superior mortgage lien. The Court **OVERRULES** Plaintiff's second objection to the Report and Recommendation of the United States Magistrate Judge. The Court **OVERRULES** Garcia-Guajardo's first, second, and fourth through eighth objections to the Report and Recommendation of the United States Magistrate Judge. The Court, however, **SUSTAINS** Garcia-Guajardo's

---

[3] The Court informed Defendants, in its August 4, 2015 Memorandum Order, ECF No. 68, that it might "summarily deny any further attempts to re-litigate matters the Court has decided." Id. at 2 n.2.

third objection and hereby **AMENDS** the Report and Recommendation to note that the current holder of the mortgage lien on the property is Carrington Mortgage Loan Trust, Series 2005-NC3 Asset Backed Pass-Through Certificates.

The Clerk shall forward a copy of this Memorandum Order to all counsel of record and to the pro se Defendants at their address of record.

While the Court notes that the mailing to Defendants of (1) the Court's May 19, 2016 Order, ECF No. 95, and (2) the service copy of Plaintiff's Response to such Order, ECF No. 96, were both returned as undeliverable, see ECF Nos. 97 and 98, the Court also notes that Defendant Roberta Garcia-Guajardo previously subscribed to the Public Access to Court Electronic Records ("PACER") system. Nevertheless, Defendants are under an obligation to notify the Court of any change of address, and a failure to do so will not relieve Defendants of the consequences of any such failure.

/s/ Mark S. Davis

Mark S. Davis
United States District Judge

Norfolk, Virginia
June 13 , 2016